# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| AREVA WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 01663 |
| v. | ) | |
| | ) | |
| MARK B. FARMER, et al., | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This case presents the longstanding antipathy between two divorced parents in the ill-fitting guise of federal constitutional claims. Plaintiff Areva Williams has filed a *pro se* complaint against her former husband, Chicago Police Officer Mark B. Farmer, Assistant State's Attorney Brittney Burns ("ASA Burns"), the Cook County State's Attorney's Office ("SAO"), and the City of Chicago ("City"). Ms. Williams alleges that Officer Farmer deprived her of her constitutional rights in violation of 42 U.S.C. § 1983, and that ASA Burns, the SAO, and the City conspired, either with Officer Farmer or each other, to do so as well. All of the defendants have moved to dismiss the complaint for failure to state a claim, or in the alternative, for a more definite statement. *See* Fed. R. Civ. P. 12(b)(6), 12(e). Defendants Burns and the SAO have also moved to dismiss the complaint on qualified immunity grounds and for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Because the allegations of the complaint demonstrate that the conduct about which Williams complains does not implicate the federal Constitution, the Court dismisses her federal claims with prejudice. The Court declines to exercise supplemental jurisdiction over her state law claims, and those claims are therefore dismissed without prejudice.

## I. BACKGROUND

Plaintiff Williams and Defendant Farmer were formerly married and have an adult daughter, Rian Marquez (née Williams-Farmer). Williams claims that when she filed for divorce in 1989, Farmer threatened to cause her harm for the rest of his life. Resp., Dkt. 35 at 2. According to Williams, Farmer has made good on that promise, violating her civil rights on numerous occasions for over ten years. Compl. at 1.2.[1] The following facts are taken from the plaintiff's complaint and response.[2] As required on a motion to dismiss, the Court reviews Williams' allegations in the light most favorable to her and draws all reasonable inferences in her favor. *See Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

### A. Allegations of Harm to Rian Marquez's "Legacy"

Williams first alleges that her daughter Rian's legal surname at birth was "Williams-Farmer." Resp., Dkt. 35 at 2. However, according to Williams, Farmer identified Rian on various forms of identification and documents with his last name only—thereby omitting the plaintiff's name from Rian's legal name and "harm[ing Rian's] legacy." *Id.* For example, according to Williams, Farmer removed "Williams" from their child's school, medical, and insurance

---

[1] The plaintiff renumbered the pages of her complaint, which used a template available on the Northern District of Illinois' web site ("Complaint for Violation of Constitutional Rights"), using her own numbering system. For the sake of clarity, the Court cites to the complaint using the plaintiff's pagination.

[2] The plaintiff filed two responses to the defendants' motions to dismiss: a "Motion to Deny," Dkt. 35, and a second response to the defendants' reply briefs, Dkt. 39. Because these two filings are substantively the same, they are referred to collectively as Williams' response. Although pleading generally requires that the allegations come from the face of the plaintiff's well-pleaded complaint, here the plaintiff is *pro se*, and "facts alleged in a brief in opposition to a motion to dismiss . . . as well as factual allegations contained in other court filings of a *pro se* plaintiff may be considered when evaluating the sufficiency of a complaint so long as they are consistent with the allegations of the complaint." *Gutierrez v. Peters,* 111 F.3d 1364, 1367 n.2 (7th Cir. 1997). Even when supplemented with the facts in her responses, however, the allegations in Ms. Williams' complaint fail to state constitutional claims.

2

documents, as well as her driver's license. *Id.* Williams alleges that this conduct was done deliberately and "in attempt to cause [her] emotional harm." *Id.*

### B. Alleged False Arrest on December 17, 2000

Williams further alleges that she was falsely arrested by Farmer on or about December 17, 2000. According to Williams, Farmer instructed her to come to the Sixth District police station to pick up their child for a routine scheduled visit. *Id.* at 3. When Williams arrived, however, she was arrested for domestic battery and contributing to the delinquency of a minor. *Id.* Williams claims that there was never a report filed with the Illinois Department of Children and Family Services ("IDCFS") alleging abuse, and that she was never contacted by any IDCFS representatives. *Id.* The charges against Williams were eventually dropped. *Id.* However, she avers that this incident continues to harm her, as it has blemished her record and impacted her ability to obtain employment. *Id.*

### C. Alleged Stalking and Harassment By Defendant Farmer on November 30, 2011 and Legal Advice from Defendant ASA Burns

Williams alleges that on November 30, 2011, Farmer unlawfully watched and stalked her at a location in downtown Chicago. *Id.* at 4.[3] According to Williams, Farmer positioned himself on the north side of an intersection and watched Williams exit a building. *Id.* After Williams left the building, Farmer approached her in an attempt to scare, intimidate, and "continue to cause [her] emotional harm." *Id.* Williams alleges that she reported this incident to ASA Burns, who proceeded to provide the plaintiff with legal advice and "specific instructions to…file for…relief from the harm caused" by Farmer. *Id.* Moreover, according to Williams, Burns promised that the plaintiff would receive a favorable outcome, predicting that her motion for relief would be heard

---

[3] The location of the incident is not entirely clear. Williams' complaint states that the events occurred on the corner of LaSalle and Clark, whereas her response states it was the corner of Randolph and State. *Compare* Compl. at 1.1 *with* Resp., Dkt. 35 at 4.

and granted. *Id.* at 4-5. Williams alleges that Burns explained to her that "the state can't go against itself but she [Burns]…was going to help me [Williams] anyway." *Id.* Despite Burns' alleged legal advice and promises, Williams was denied relief and a judgment was entered against her. Compl. at 2.3-2.4. Williams claims that ASA Burns had no authority to instruct or advise her on what to include in her motion. Resp., Dkt. 35 at 4.[4]

### D. Conspiracy Between Defendant Farmer and Other Unnamed Officers, and Between Defendants Farmer and ASA Burns

Williams also claims that Farmer has also conspired with other police officers from the Sixth and Eighth Districts to violate her civil rights. Compl. at 1.2. According to Williams, Farmer conspired with other officers to harass and intimidate her by filing false reports and having other officers stalk her. *Id.* at 2.4. Moreover, Williams claims that the Chicago Police Department had multiple police officers conspire with Farmer to stalk, intimidate, harass, and oppress her. *Id.* While these officers are unnamed in the complaint, Williams refers to one particular officer who, she alleges, is Farmer's neighbor and who works in the Eighth District, where Williams lives. *Id.* at 4.1.

Finally, Williams also alleges that ASA Burns and the SAO conspired with Farmer to maliciously and willfully harm her. *See id.* at 2.2, 2.4. Williams claims that ASA Burns and the SAO failed to protect her from Farmer and others who were violating her civil rights. *Id.* at 2.2. As a result of the defendants' conduct, Williams claims that she has lost a sense of peace and safety, Compl. at 4.3, a loss of freedom and trust, and lives in fear of Farmer. Compl. at 1.5.

---

[4] While it is not entirely clear from the complaint, Burns' reply brief maintains that these events took place within the context of child support enforcement proceedings in the Eighteenth Judicial Circuit of Illinois, in which the plaintiff filed a motion to modify and abate her child support obligations on June 11, 2011. *See* Reply, Dkt. 38 at 2. The plaintiff alleges only that she "filed [a] motion for modification [and] was given a date," and that ASA Burns called her and "advised legally on [the] matter of legal [advice]…for [the] same matter [that the] states attorney filed for judgment." Compl. at 2.3.

## II. ANALYSIS

The plaintiff's claims against Officer Farmer form the core of this case, and the Court addresses them first. Analysis of Williams' claims against the City of Chicago, ASA Burns and the SAO, which are to a large extent derivative of her claims against Officer Farmer, follow.

### A. Claims Against Defendant Farmer

Officer Farmer has moved to dismiss Williams' complaint for failure to state a claim. When deciding a motion to dismiss, this Court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). Furthermore, *pro se* complaints are liberally construed and not held to the same standards as pleadings prepared by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, a court will not strain to find inferences not apparent on the face of the complaint. *Coates v. Ill. State Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir. 1977). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

To state a claim under § 1983, a plaintiff "must allege that a governmental official, acting under color of state law, deprived [her] of a right secured by the Constitution or laws of the United States." *Estate of Sims ex rel. Sims v. County of Bureau,* 506 F.3d 509, 514 (7th Cir. 2007) (citing *Christensen v. County of Boone,* 483 F.3d 454, 459 (7th Cir. 2007)). For purposes of a § 1983 claim, a police officer "acts under color of law if he is clothed with authority of the state, and is purporting to act under that authority." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 929 (1982). Private actions taken in furtherance of personal interests, even if performed by an officer while on duty, are insufficient, by themselves, to constitute actions taken under "color of state law." *See, e.g.*, *Estate of Sims ex rel. Sims*, 506 F.3d at 516. Moreover, "acts of officers

5

in the ambit of their personal pursuits are plainly excluded." *Screws v. United States*, 325 U.S. 91, 111 (1945); *see also Latuszkin v. City of Chicago*, 250 F.3d 502 (7th Cir. 2001) (intoxicated off-duty police officer not acting "under color of state law" when he struck and killed pedestrian driving home from party with other officers).

          1.   *Alleged Harm to the "Legacy" of Rian Marquez*

Williams' claim with respect to Rian Marquez is that Farmer improperly identified the child by the surname "Farmer" instead of "Williams-Farmer." The fundamental problem with this claim is that what Williams is really complaining of is an ongoing dispute with her ex-husband, not state action that violates the federal Constitution. Here, the plaintiff has failed to demonstrate that, in omitting her surname from some of Rian's records, her ex-husband was acting "under color of state law" or that he violated her constitutional rights. Even accepting Williams' allegations as true, they do not give rise to a plausible inference that Farmer was in any way exploiting his position as a police officer—*i.e.,* acting "under the color of state law"—in omitting the plaintiff's surname from their daughters' records. Nor could there be a basis to do so—the acts described are beyond the purview of the duties and responsibilities of police officers. What she describes (if true) describes acts taken by her ex-husband, in his capacity as Rian's father, to antagonize and marginalize his ex-wife. Farmer's actions regarding his child's official records and identification cannot plausibly be construed as anything other than matters of a personal nature, outside the ambit of his duties as a police officer.

Because Farmer was not acting under color of state law, there was no government action; and without government action, there can be no constitutional violation. *See Morfin v. City of East Chicago,* 349 F.3d 989, 1003 (7th Cir. 2003) ("the conduct of private parties lies beyond the Constitution's scope in most instances," quoting *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 620 (1991)). But even if Officer Farmer had been acting "under color of law," identifying

his daughter on records without her mother's maiden name does not violate the United States Constitution. To establish a due process claim under § 1983, the plaintiff must first establish the deprivation of a constitutionally protected interest of life, liberty, or property. *See Lekas v. Briley,* 405 F.3d 602, 607 (7th Cir. 2005). The alleged injury that the plaintiff complains of here fails to implicate any of those interests; nor does it come close to establishing an unreasonable search or seizure, *see Narducci v. Moore,* 572 F.3d 313, 319 (7th Cir. 2009), or some other right, privilege, or immunity secured by the Constitution. *See id.* at 318-19.[5]

Accordingly, the plaintiff's claim, based on actions taken by Farmer regarding the allegedly inappropriate use of their daughter's name on various documents and identification, is dismissed with prejudice.

## 2. *Alleged False Arrest on December 17, 2000*

Williams claims that on December 17, 2000 Farmer "lured" her to a police station only to arrest her on false charges when she arrived. Resp., Dkt. 35 at 3. While these allegations do suffice to allege that Officer Farmer was acting under color of law and violated Williams' Fourth Amendment right to be free from unreasonable seizures, this claim is plainly barred by the statute of limitations. "In Illinois, the statute of limitations period for § 1983 claims is two years." *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011) (citing 735 ILCS 5/13-202; *Jenkins v. Village of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007)). Williams alleges that she was falsely arrested by Farmer on December 17, 2000, at which point the clock on her constitutional claim started ticking. *See id.* (§ 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated") (citing *Hileman v. Maze*, 367 F.3d 694,

---

[5] It bears noting also that the plaintiff would also lack standing to assert any constitutional claims on behalf of her daughter, now an adult, and that any § 1983 claims based on conduct that occurred when Rian was a minor would be barred by the two year statute of limitations on such claims. *See infra* at 7-8.

696 (7th Cir. 2004), quoting *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993)); *Brooks v. City of Chicago*, 564 F.3d 830, 832 (7th Cir 2009) (arrestee's § 1983 claim accrued at the time of the alleged wrongful arrest); *see also Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir. 1998) ("the plaintiff can plead all the elements on the day of the arrest regardless of later proceedings"). Because Williams did not file her claim until March 7, 2012—nearly twelve years after the alleged incident occurred—her claim is barred by the statute of limitations. Accordingly, the plaintiff's claim for false arrest that occurred on December 17, 2000 is also dismissed with prejudice.

3. *Claims Against Defendant Farmer for Stalking, Harassment, and Conspiracy with Other Unnamed Police Officers and the City*

Williams also alleges that, more recently, on November 30, 2011, Farmer "stalked, followed, [and] engaged in [an] unjustified physical altercation" with her. Compl. at 1.1. Based on these claims, Williams appears to be alleging that she was subject to an unreasonable seizure in violation of the Fourth Amendment on this occasion as well. This claim, however, suffers from the same fatal defects that require dismissal of her claim relating to her daughter's name. First, Williams fails to allege any facts plausibly suggesting that Farmer's actions were "under color of law." And second, the acts she describes do not constitute a violation of the Fourth Amendment.

Williams has not provided sufficient factual context to plausibly show that Farmer was acting under the color of law at the time of their encounter on November 30, 2011. The complaint says that Farmer "harassed," "stalked," and "approached" her on that date, but provides no information from which to infer that he did so in a manner that exploited, or relied upon, his position as a police officer. It provides no basis to distinguish Farmer's acts "under color of law" from similar acts that might be alleged of another ex-husband who does not happen

8

to be a police officer. Without more, all that can be plausibly inferred from the complaint is that this was another episode in a long and contentious personal history between two former spouses. Accordingly, Williams has failed to plead sufficient facts to plausibly allege that Farmer was acting under color of state law at the time of their encounter.

Were that the only defect with respect to the November 30, 2011, incident, Williams might be able to cure it with additional factual allegations. But even assuming that she could do so, she would still fall short of stating a constitutional claim, because allegations of stalking and harassment do not constitute a "seizure" under the Fourth Amendment. "Violation of the Fourth Amendment requires an intentional acquisition of physical control." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). Here, Williams simply alleges that Farmer approached her in "an attempt to scare and intimidate her." Resp., Dkt. 35 at 4. For a nonphysical encounter with police to constitute a seizure, a plaintiff must show that they submitted to the officer's show of authority. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991). The issue is whether a reasonable person would feel free to leave based on the totality of the circumstances. *Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010). But there is nothing about Farmer's presence at the public intersection, or his approach of Williams, that suggests a reasonable person would not have felt free to terminate the encounter.

Williams' claim that Farmer "engaged in [an] unjustified physical altercation" with her is similarly problematic—not only is it entirely conclusory, but, standing alone, physical contact is insufficient to constitute a "seizure" as a matter of law, and Williams does not even allege that much. *Id.*, 621 F.3d at 620; *see also Acevedo v. Canterbury*, 457 F.3d 721, 725 (7th Cir. 2006) ("Certain types of non-restraining physical contact, without a concomitant showing of authority, are just too minor to constitute a 'seizure' for Fourth Amendment purposes."); *Knox v. Luke*, No. 11 C 07759, 2012 WL 4361446, at *3 (N.D. Ill. Sept. 21, 2012) (officer's attempt to run over

9

plaintiff with vehicle not a seizure because it did not detain the plaintiff). At its heart, Williams' complaint alleges only that Farmer was following and stalking her, which, by itself, does not amount to an unreasonable seizure in violation of the Fourth Amendment. *See Christensen*, 483 F.3d at 460 (affirming dismissal of claim that deputy sheriff's following and harassing of the plaintiffs constituted a seizure). Without alleging facts that suggest a constitutional violation, Williams cannot proceed under § 1983.

Williams' claim of a conspiracy between Farmer, other unnamed police officers, and the City to deprive her of her constitutional rights fails for the same reason. Allegations that the officers "stalked" or "harassed" Williams, without more, neither state nor give rise to a plausible inference of a constitutional violation. *See Christensen*, 483 F.3d at 460 (officer's repeated following and stalking did not constitute a seizure under the Fourth Amendment); *Knox*, 2012 WL 4361446, at *2 (officer's stalking and harassment did not constitute a seizure because it did not restrict the plaintiff's freedom of movement).

Williams' conspiracy claim against the officers also falls short because she fails to plausibly show the existence of a conspiracy between any of the defendants. To prevail on a § 1983 conspiracy claim the plaintiff must show that: "(1) a state official and private individual(s) reached an understanding to deprive her of her constitutional rights; and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). While § 1983 conspiracy allegations need not be pled with particularity under Rule 9(b), *Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir. 2006), mere suspicion or bare allegations that persons have conspired against the plaintiff are not enough. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009); *Evers v. Reak*, 21 Fed. Appx. 447, 450 (7th Cir. 2001) ("Vague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's burden."). Even *pro se* litigants, whose complaints are construed

liberally, must plead "something in the way of facts" in order to state a claim. *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1208 (7th Cir. 1980).

While a plaintiff must "allege the parties, the general purpose, and the approximate date of the conspiracy," *Loubser*, 440 F.3d at 443 (citing *Walker v. Thompson*, 288 F.3d 1005, 1007–08 (7th Cir. 2002), proof of the conspiracy may be provided by circumstantial evidence so long as it is reasonable to infer from the circumstances that the alleged conspirators had a "meeting of the minds." *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979). But Williams' allegations of conspiracy fall well short of what is required.

According to Williams, Farmer conspired with multiple officers from the Sixth and Eighth Districts to stalk, intimidate, and harass her—but that's it. Williams fails to allege any particular dates, locations, or circumstances in which her constitutional rights were violated by any police officers, including Farmer. Furthermore, Williams' allegations are too vague to reasonably infer that there was a "meeting of the minds" between Farmer and other unnamed police officers. *See, e.g.*, *Cooney*, 583 F.3d at 971 (alleged conspiracy involving ex-husband's attorney and child's therapist in state court custody proceeding lacked sufficient factual allegations to survive motion to dismiss). In fact, she provides virtually no circumstantial evidence from which to infer a conspiracy.

Accordingly, Williams' claim of a conspiracy between Farmer, other unnamed officers, and the City to violate her constitutional rights is also dismissed with prejudice.

### B. Alleged Conflict of Interest by Defendants SAO and ASA Burns, in Her Official Capacity

Williams' complaint includes allegations that the SAO conspired with ASA Burns to deprive her of her constitutional rights. The SAO argues that this and any other claims against it are barred by the Eleventh Amendment. "The Eleventh Amendment prohibits courts from

deciding suits brought by private litigants against states or their agencies." *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 2004). Although the Eleventh Amendment does not prohibit claims against counties and similar municipal corporations, *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977), the Illinois Supreme Court has held that, under the Illinois Constitution, State's Attorneys are officials of the state, not the county. *See Garcia*, 24 F.3d at 969 (citing *Ingemunson v. Hedges*, 133 Ill.2d 364, 369–70, 549 N.E.2d 1269, 1272 (Ill. 1990)). As such, the SAO is immune from suit under the Eleventh Amendment. *See Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 264–65 (7th Cir. 1999) (affirming dismissal of claims against the Will County SAO as barred by the Eleventh Amendment).[6] Accordingly, the plaintiff's claims against the SAO are dismissed with prejudice.

Furthermore, in Illinois, Assistant State's Attorneys are also considered state officials, *see Jimenez v. Illinois,* 11 C 04707, 2012 WL 174772, at *5 (N.D. Ill. Jan. 18, 2012) (citing *Manos v. Caira,* 162 F. Supp. 2d. 979, 987 (N.D. Ill. 2001)), and therefore, "[a] suit against Assistant State's Attorneys in their official capacity is a suit against the…State's Attorney," *Manos*, 162 F. Supp. 2d at 987 (citing *Taylor v. Partee,* No. 90 C 01134, 1991 WL 136015, at *2 (N.D. Ill. July 17, 1991)). Accordingly, to the extent that Williams alleges claims against ASA Burns in her official capacity, those claims are also barred by the Eleventh Amendment and therefore dismissed with prejudice.

---

[6] The Supreme Court has directed that in deciding Eleventh Amendment questions with respect to some governmental officials, the court must look at the office's particular function at issue in the case. *See McMillian v. Monroe County*, 520 U.S. 781, 785–86 (1997) (whether sheriff acted as state or county official would depend on function at issue in the particular case). The Seventh Circuit has not addressed the specific question of whether an Illinois State's Attorney is a state or county official when acting, as here, in a civil case, but the plaintiff has suggested no reason why the State's Attorney's role in the context of child support litigation would more properly be considered as a county, rather than state, function. Accordingly, the Court need not explore the question further. *Nelson v. La Crosse Cnty. Dist. Atty.,* 301 F.3d 820, 827 n.7 (7th Cir. 2002).

## C. Alleged Conflict of Interest by ASA Burns in Her Individual Capacity

Though the allegations in Williams' complaint and responses are extremely difficult to follow, it appears that Williams reported to ASA Burns that Farmer was stalking and harassing her. She alleges that ASA Burns gave her legal advice and promised or predicted that the plaintiff would receive a favorable outcome on a motion for relief. According to Williams, ASA Burns called her after Williams had filed for modification and told her what to expect and what she should include in her motion. Williams asserts that Burns was inappropriately "on both sides" of the matter (though it is not clear that the state was a party to the proceeding) but she does not claim that the advice she allegedly received from ASA Burns was wrong or deficient in any way—except, apparently, Burns' prediction that Williams would prevail.

Williams has failed to plead "factual content that allows [this Court] to draw a reasonable inference that the defendant is liable for" a constitutional violation pursuant to § 1983. *See McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 885 (7th Cir. 2012). Williams has only vaguely alleged that ASA Burns violated her constitutional rights by providing her legal advice regarding either her modification proceedings or her claim for relief for the alleged constitutional violations committed by Farmer. The plaintiff has not, however, provided the factual context of that advice or of what the legal advice consisted. Moreover, the plaintiff does not allege what role ASA Burns played in the proceedings in which her motion for relief was decided, whether those proceedings were in the context of a child support modification, or whether they were part of a separate action against Farmer. At best, Williams' allegations about this legal proceeding might be construed to sound in tort (which is not to say that they suffice to state any specific tort claim), but they do not begin to describe a constitutional violation, and so do not state a claim under § 1983. Whether ASA Burns inappropriately provided legal advice, or provided

inappropriate legal advice, in a civil proceeding does not implicate the federal constitution (indeed, there is not even a constitutional right to counsel in civil proceedings).[7]

ASA Burns also argues that Williams' claims are barred by the *Rooker-Feldman* doctrine because they are inextricably intertwined with the child-support enforcement orders entered against Williams in the Circuit Court of Cook County. According to ASA Burns, Williams is challenging the soundness of the child support proceedings and the manner in which they were entered against her. Under *Rooker-Feldman*, "lower federal courts do not have subject matter jurisdiction over claims seeking review of state court judgments." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983)). To the extent that Williams is seeking a review of state court proceedings—or more specifically, as the defendants contend, a review of child support enforcement proceedings, Reply, Dkt. 38 at 6—the Court agrees that those claims would be barred by the *Rooker-Feldman* doctrine. The problem is that based on the pleadings, it is essentially impossible to discern to which proceeding Williams is referring.

The defendants have provided information about a child support proceeding, but even assuming that the Court can properly consider that information on a motion to dismiss, it is not clear that the proceeding Williams describes is the same one. Accordingly, the Court lacks

---

[7] This might, as Burns contends, also mean that she is entitled to qualified immunity because the plaintiff has failed to plead a clearly established constitutional violation. Reply, Dkt. 38 at 9. The doctrine of qualified immunity shields government officials from liability so long as their conduct did not violate clearly established constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). But qualified immunity is available to government attorneys only when they are representing the government. *See Auriemma v. Montgomery*, 860 F.2d 273, 277–78 (7th Cir. 1988) (noting that government attorneys in non-prosecutorial role enjoy qualified immunity). To the extent that Burns stepped out of her role as an Assistant State's Attorney, as Williams may be alleging, it does not follow that she would enjoy qualified immunity for her actions.

adequate information to determine whether the *Rooker-Feldman* doctrine applies. At present, it is clear only that the plaintiff's complaint fails to allege facts sufficient to state any claim against ASA Burns, and it is on that basis that the Court dismisses the complaint as to Burns. Because the very nature of the alleged "injury" (giving legal advice) fails to state a constitutional violation, Williams' claim is dismissed with prejudice.

Moreover, Williams' allegation of a conspiracy between Farmer and ASA Burns suffers from the same deficiencies. Like Williams' claim of a conspiracy involving other police officers and the City, the complaint contains only conclusory allegations regarding an alleged conspiracy between Farmer and ASA Burns—namely, only that Farmer and Burns conspired to violate the plaintiff's constitutional rights. These bare allegations are simply too vague to plausibly suggest a "meeting of the minds" between the defendants; indeed, Williams' allegations can be read to suggest that Burns was helping Williams contest Farmer in a legal proceeding ("Brittany Burns gave legal advice and told to file for relief & state can't be against state but she wanted to help & gave legal advice on filing for relief"), a fact that undermines any inference that Burns and Farmer were conspiring together against Williams. Moreover, even assuming the existence of a conspiracy, Williams fails to allege the required constitutional violation. *See Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982) ("Section 1983 does not…punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises."). As explained above, the allegation that ASA Burns provided Williams' with legal advice, or even deficient legal advice, falls short of that requirement. Accordingly, Williams' allegation of a conspiracy between Farmer and ASA Burns is dismissed with prejudice.

### D. State Law Claims

As a final matter, Williams alleges a number of state law claims such as defamation, Resp., Dkt. 35 at 5, and malicious prosecution, Compl. at 3.1. Because Williams has failed to

state a viable claim under § 1983, however, the Court declines to exercise supplemental jurisdiction over these state claims. Accordingly, Williams' state claims are dismissed without prejudice.

*   *   *

Because Ms. Williams has failed to plead viable claims for constitutional violations pursuant to § 1983, her federal claims against Farmer, ASA Burns, and the City, based on the incidents described in the current complaint, are dismissed with prejudice. Moreover, to the extent that Williams alleges constitutional violations by the SAO or ASA Burns in her official capacity, those claims are barred by the Eleventh Amendment.

In the event that Williams believes that she has any potentially viable constitutional claims based on events and facts that are not described in the original complaint, she is granted leave to file an amended complaint consistent with this Order within 30 days. Prior to filing an amended complaint, however, the Court strongly advises the plaintiff to use the services of the Court's *Pro Se* Assistance Office. The *Pro Se* Assistance Program operates by in-person appointment only. Appointments may be made at the Clerk's Intake Desk or by calling (312) 435-5691.

Entered: March 20, 2013

_____
John J. Tharp, Jr.
United States District Judge